## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**KENDRICK A. ROBINSON, SR.**                                    **PLAINTIFF**
**ADC #550962**

**V.**                              **NO. 4:22-cv-00350-JM-BD**

**GEORGE CLARKE and**
**KIM SMITH**                                    **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections:

This Recommendation has been sent to United States District Judge James M.

Moody Jr. Any party may file objections if they disagree with the findings or conclusions

set out in the Recommendation. Objections should be specific and should include the

factual or legal basis for the objection.

To be considered, objections must be filed within 14 days. If parties do not file

objections, they risk waiving the right to appeal questions of fact. And, if no objections

are filed, Judge Moody can adopt this Recommendation without independently reviewing

the record.

### II.    Background:

Plaintiff Kendrick A. Robinson, Sr., formerly a detainee at the Pulaski County

Regional Detention Facility (PCRDF), filed this lawsuit without the help of a lawyer

under 42 U.S.C. § 1983. (Doc. No. 2) In his complaint and amended complaint, Mr.

Robinson alleges that, when he was booked into the PCRDF, Sergeant George Clarke and

Intake Nurse Kim Smith noticed his head injury but failed to provide him any medical

treatment. (Doc. Nos. 2, 8) Mr. Robinson sues Defendants Clarke and Smith in both their individual and official capacities seeking money damages.

Both Defendants have moved for summary judgment arguing that they are entitled to judgment as a matter of law on all claims against them. (Doc. Nos. 49, 58) Mr. Robinson also has filed a motion for summary judgment. (Doc. No. 53) Both Defendants have responded to Mr. Robinson's motion for summary judgment. (Doc. Nos. 58, 63) Mr. Robinson has not responded to Defendants' motions for summary judgment; and the time for doing so has passed. (Doc. Nos. 57, 62) Accordingly, all motions are ripe for review.

For the following reasons, Defendants' motions for summary judgment should be granted, and Mr. Robinson's motion for summary judgment should be denied.

### III.    Discussion:

#### A.    Summary Judgment Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if -- but only if -- the evidence shows that there is no genuine

dispute about any fact important to the outcome of the case. See FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

### B.    Undisputed Factual Background

On December 22, 2020, at approximately 1:38 a.m., Mr. Robinson arrived at the Baptist Health Medical Center emergency room. (Doc. No. 50-1 at 1; Doc. No. 60-9 at 2) At 1:49 a.m., medical personnel diagnosed Mr. Robinson with "[a]brasians of multiple sites, aggressive behavior, hematoma of scalp, drug-induced intensive care psychosis, traumatic rhabdomyolysis, [and] lactic acid increased." (Doc. No. 50-1 at 2; Doc. No. 60-9 at 3)

Mr. Robinson's Baptist Medical Center records reflect that:

Pt arrives by ems in police custody. EMS states that pt got in an altercation with PD and "pulled a gun on them" Per ems pt was tased by police and fell to the ground hitting his face and head. Pt arrives with abrasions to L forehead, lips and nose, pt also has abrasions to RLE and R elbow, wounds cleansed and covered with Kerlex. Pt arrives combative and aggressive towards staff. Pt disoriented to time and situation, not wanting to answer questions at this time. [sic]

(Doc No. 50-1 at 5; Doc. No. 60-9 at 8)

Medical personnel cleaned and bandaged Mr. Robinson's abrasions and scratches. (Doc. No. 50-1 at 5; Doc. 60-9 at 8) Medical records indicate that the primary reason for Mr. Robinson's admission to the hospital was "mental health." (Doc. 50-1 at 6; Doc. 60-9 at 11) With regard to Mr. Robinson's head injury, medical personnel noted "mild swelling left forehead," "small left scalp hematoma," "superficial lacerations and bruising," "nothing acute," and "superficial abrasions, contusions, lacerations to scalp and face." (Doc. No. 50-1 at

7, 9, 11, 14, 15; Doc. No. 60-9 at 46, 48, 53, 56, 57)

Medical personnel conducted a CT scan showing: "Head--no acute injury." (Doc. No. 50-1 at 14; Doc. No. 60-9 at 56) The CT also showed, "no acute intracranial hemorrhage or significant mass effect noted. Small left scalp hematoma." (Doc. No. 50-1 at 9; Doc. No. 60-9 at 48) The results of the imaging were "Negative CT scan of the health without contrast. No acute posttraumatic intracranial finding is visible. Left frontal scalp hematoma" (Doc. No. 50-1 at 21; Doc. No. 60-9 at 96); and "[n]o acute facial bone fracture visualized. Left frontal scalp hematoma." (Doc. No. 50-1 at 26; Doc. No. 60-9 at 101)

At discharge, medical personnel did not include any follow up appointment or discharge instructions. (Doc. No. 50-1 at 27; Doc. No. 60-9 at 153)

On December 23, 2020, Mr. Robinson was booked into the PCRDF. (Doc. No. 50-2 at 1; Doc. No. 60-2 at 1) During his medical intake, Nurse Smith noted that Mr. Robinson had been examined at Baptist Health emergency room for a head injury and that he had a knot, bruising, and scratches on his forehead. (Doc. No. 50-2 at 1, 3; Doc. No. 60-4 at 1, 3)

On December 24 and December 25, medical personnel conducted segregation rounds. (Doc. No. 60-4 at 17) Mr. Robinson did not report any distress or concerns at that time. (*Id*.)

On December 29, medical personnel examined Mr. Robinson and noted "[h]ealing, scabbed wounds R knee and forehead . . . [n]o other complaints." (*Id. at 19*)

On December 30, medical personnel again conducted segregation rounds. Mr. Robinson did not request any medical services at that time. (*Id. at 17*)

On February 10, 2021, medical personnel examined Mr. Robinson. The provider noted:

> Pt. c/o daily HA [headache]. He believes it is related to the head injury that occurred at his arrest. Pt. reports he was seen at Baptist trauma center prior to booking, but feels that they did not do a thorough exam and believes he needs to have a scan of his head at this time. I saw the patient on 12/29/20 and his[sic] did not have complaints related to his head trauma at that time. There is a scar above L eyebrow. Pt. denies nausea or vomiting.

(*Id. at 23*) She also noted that Mr. Robinson "[did] not have neurological symptoms or concussion at this time. Send out for further work up is not warranted. Chronic daily headaches are not uncommon and rarely indicate a neurological problem." (*Id. at 27*)

On February 26, 2021, Mr. Robinson submitted a grievance stating: "I was booked in through intake with an obvious blunt force injury to head[.] I need medical attention bc my head hurts. I been to medical once and the med don't work[.] I want a mri or something [of] that sort." (Doc. No. 60-3 at 1)

On April 29, 2021, a provider examined Mr. Robinson and did not make any referral for an outside appointment. (*Id.*)

On March 24, 2021, Mr. Robinson was released from the PCRDF. (Doc. No. 60-2 at 2)

### C.    Deliberate-Indifference Claim

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."[1] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). At the summary judgment stage, Mr. Robinson "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 576 (8th Cir. 2019). Mr. Robinson must show that the Defendants' conduct was more than negligent—more even than grossly negligent. *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Fourte*, 746 F.3d at 389. Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). See also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015)

---

[1] Because Mr. Robinson alleges that Defendants were deliberately indifferent to his medical needs when they booked him into the PCRDF, the Court assumes that Mr. Robinson was a pre-trial detainee on December 23, 2020. Accordingly, his deliberate-indifference claims arise under the Fourteenth Amendment, rather than the Eighth Amendment. However, the Eighth Circuit has applied the same standard to deliberate indifference claims raised by pretrial detainees under the Fourteenth Amendment as those raised by convicted prisoners under the Eighth Amendment. *Vaughn v. Greene Cty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

(to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

### 1.    Nurse Smith

Nurse Smith submits her affidavit in support of her motion for summary judgment. (Doc. No. 50-3) She testifies that, when Mr. Robinson arrived at the PCRDF, she believed that Baptist Health medical personnel had "appropriately evaluated" Mr. Robinson and that they "had determined that Mr. Robinson needed no further treatment to his existing medical conditions, including his forehead abrasion." (Doc. No. 50-3 at 1) According to Nurse Smith, she "never believed that Mr. Robinson needed additional medical treatment for his forehead abrasion or any other medical condition"; and she "did not perceive Mr. Robinson's forehead abrasion, or any other medical condition, to be a serious medical need" or that he was "at a substantial risk of serious harm." (*Id*. at 1-2) Accordingly, Nurse Smith "believed that Mr. Robinson had been fully assessed and appropriately treated at the Hospital for all of his medical conditions, including his forehead abrasion, he was healthy and able to be safely incarcerated, and he needed no further immediate treatment at the time of his medical intake on December 23, 2020." (*Id*. at 2)

Mr. Robinson has failed to come forward with any evidence to show that he suffered any serious medical need at the time he was booked into the PCRDF. Rather, as Nurse Smith emphasizes, the day before he arrived at the PCRDF, Baptist Health personnel thoroughly examined Mr. Robinson, including conducting a CT scan. They determined that Mr. Robinson did not suffer any acute injuries; and they cleaned and

bandaged his abrasions. Upon his discharge, Baptist medical personnel did not recommend any follow up appointments for Mr. Robinson. And, Mr. Robinson did not request any further medical treatment for his alleged head injury until February 2021, nearly six weeks after his arrival at the PCRDF. Moreover, according to Nurse Smith's testimony, she was not aware that Mr. Robinson needed any further medical treatment upon his arrival at the PCRDF. Accordingly, she could not have been deliberately indifferent to any such need.

Based on a thorough review of Mr. Robinson's medical records and Nurse Smith's testimony, no reasonable fact-finder could conclude that Nurse Smith intentionally refused to provide Mr. Robinson any essential care or treatment. To the contrary, the undisputed evidence shows that medical personnel thoroughly examined him the day before he arrived at the PCRDF; and he did not have any serious medical need requiring further medical treatment. Accordingly, Nurse Smith is entitled to judgment as a matter of law on Mr. Robinson's deliberate-indifference claim against her.[2]

---

[2] Mr. Robinson's official capacity claims against Nurse Smith are the equivalent of claims against Turn Key. See *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (1993). To state a claim against Turn Key, Mr. Robinson would have had to plead that he suffered a constitutional violation as a result of a Turn Key policy or custom. See *Id.* Because Mr. Robinson did not make any such allegations in his complaint or amended complaint, he has failed to state an official-capacity claim against Nurse Smith. See 42 U.S.C. § 1997e(c)(1) ("The court shall on its own motion . . . dismiss any action brought with respect to prison conditions under section 1983 of this title . . . if the court is satisfied that the action . . . fails to state a claim upon which relief can be granted. . ..") (emphasis added); *Maxwell v. Wooten*, 2021 WL 2188757, (E.D. Ark. April 22, 2021), report and recommendation adopted by *Maxwell v. Wooten*, 2021 WL 2188946 (E.D. Ark. May 28, 2021) (Court may *sua sponte* dismiss a claim at the summary judgment stage if it is clear that plaintiff's factual allegations do not state a plausible constitutional claim).

### 2.    Sergeant Clarke

a.    Individual Capacity

Sergeant Clarke submits his affidavit in support of his summary judgment motion. (Doc. No. 60-8) He testifies that he is "not a medical professional" and did not have the medical knowledge to determine a course of treatment for Mr. Robinson." **(**Id. at 1) Rather, Turn Key Health personnel are responsible for inmates' medical treatment. (Id.) Sergeant Clarke understood that medical personnel had already "assessed" Mr. Robinson and provided him "any necessary treatment" prior to releasing him from the hospital. (Id.) Sergeant Clarke observed a "bruise and an abrasion" on Mr. Robinson's head when he was booked into the PCRDF. However, he "did not perceive [Mr. Robinson's] purported head injury to be a serious medical need" or "necessitating a doctor's attention." (Id. at 2) As noted, Mr. Robinson did not request medical attention "at the time of his booking"; and Sergeant Clarke was "not present during [Mr. Robinson's] medical visits with Turn Key Health personnel." Id.

"Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Here, Mr. Robinson has failed to come forward with any evidence to support such a claim against Sergeant Clarke.

_____

Upon his arrival to the PCRDF, Mr. Robinson had recently been thoroughly examined by Baptist Health medical personnel, and he apparently had no serious medical need that would require medical treatment at the jail. Furthermore, Mr. Robinson did not request any medical attention when he was booked into the PCRDF.

Because Sergeant Clarke was not responsible for Mr. Robinson's medical treatment, and because Mr. Robinson has failed to present any evidence that Sergeant Clarke intentionally denied, delayed, or interfered with any prescribed medical treatment, no reasonable fact-finder could conclude that Sergeant Clarke was deliberately indifferent to Mr. Robinson's medical needs. Again, to the contrary, the undisputed evidence shows that medical personnel thoroughly examined Mr. Robinson the day before he arrived at the PCRDF, and he did not have any serious medical condition necessitating medical treatment. Accordingly, Sergeant Clarke also is entitled to judgment as a matter of law on Mr. Robinson's deliberate-indifference claim against him.[3]

b.    Official Capacity

Mr. Robinson's official capacity claims against Sergeant Clarke are treated as claims against Pulaski County. See *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010); *Jenkins v. Cnty. of Hennepin, Minn.*, 557 F.3d 628, 631-32 (8th Cir. 2009). In a § 1983 action, a county cannot be held vicariously liable for the actions of its employees. See *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 692-93 (1978); *Parrish*, 594 F.3d at 997.

---

[3] Sergeant Clarke also argues that he is entitled to qualified immunity on Mr. Robinson's claims against him in his individual capacity. Because the Court finds that Mr. Robinson's deliberate-indifference claim fails as a matter of law, the Court will not address Sergeant Clarke's qualified immunity argument in this Recommendation.

Rather, a county can be held liable only if an official county policy or widespread custom was the "moving force" behind the alleged constitutional violation. See *Luckert v. Dodge Cnty.*, 684 F.3d 808, 820 (8th Cir. 2012); *Jenkins*, 557 F.3d at 633.

Here, Mr. Robinson has failed to come forward with any evidence that he suffered any constitutional injury as the result of a Pulaski County custom or policy. As a result, Sergeant Clarke is entitled to judgment as a matter of law on Mr. Robinson's claim against him in his official capacity.

## IV.  <u>Conclusion:</u>

The Court recommends that Defendants' motions for summary judgment (Doc. Nos. 49, 58) be GRANTED and that all of Mr. Robinson's claims be DISMISSED, with prejudice. Mr. Robinson's motion for summary judgment (Doc. No. 53) should be DENIED, as moot.

DATED, this 18th day of July, 2024.

_____
UNITED STATES MAGISTRATE JUDGE